MDB\MG: 2019R00196
cjr:9-11-2020

FILED
U.S. DISTRICT COURT
DISTRICT OF MARYLAND

2020 SEP 15  PM 1: 37

CLERK'S OFFICE
AT BALTIMORE
_____ DEPUTY

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| **UNITED STATES OF AMERICA** | |
| **v.** | **CRIMINAL NO. PWG-19-0137** |
| **GREGORY BUTLER,**<br>    a/k/a "GOTTI,"<br>    a/k/a "LITTLE DICK,"<br>    a/k/a "SAG,"<br>**DARRAN MALIK BUTLER,**<br>    a/k/a "LIK,"<br>**BOBBY CANNON,**<br>    a/k/a "FREAKY,"<br>    a/k/a "LOSHO,"<br>**DAREAN COOK,**<br>**JUAWAN DAVIS,**<br>    a/k/a "FAT DADDY,"<br>**EDWARD BUDDY HALL,**<br>    a/k/a "GWAR,"<br>**TIMOTHY LEGARD,**<br>**DAVON OWENS,**<br>**D'ANDRE PRESTON**<br>    a/k/a "WHITEBOY,"<br>    a/k/a "WHITES,"<br>**DESMOND RINGGOLD,**<br>    a/k/a "WORM,"<br>**JAMES HENRY ROBERTS,**<br>    a/k/a "BUB,"<br>**TIRREL SAUNDERS,**<br>    a/k/a "PRETTY,"<br>**NATHAN STANLEY,**<br>**JAMIE WAGONER,**<br>**LAURA WARNER,**<br>**EMANUEL WATKINS,** | (Conspiracy to Participate in a Racketeering Enterprise, 18 U.S.C. § 1962(d); Conspiracy to Distribute Controlled Substances Resulting in Death and Serious Bodily Injury, 21 U.S.C. § 846; Conspiracy to Use Interstate Commerce Facilities in the Commission of Murder-for-Hire, 18 U.S.C. § 1958; Use of Interstate Commerce Facilities in the Commission of Murder-for-Hire, 18 U.S.C. § 1958; Possession of a Firearm During and in Relation to a Drug Trafficking Crime, 18 U.S.C. § 924(c); Possession of a Firearm and Ammunition by a Prohibited Person, 18 U.S.C. § 922(g)(1); Possession with Intent to Distribute Controlled Substances, 21 U.S.C. § 841; Distribution of Controlled Substances Resulting in Death and Serious Bodily Injury, 21 U.S.C. § 841; Aiding and Abetting, 18 U.S.C. § 2; and Forfeiture) |
| **Defendants.** | |

## FOURTH SUPERSEDING INDICTMENT

1

## COUNT ONE
**Conspiracy to Participate in a Racketeering Enterprise**

### INTRODUCTION

1.      The NFL criminal enterprise was an organization comprised of individuals with social and familial ties to the Edmondson Village neighborhood in southwest Baltimore, Maryland. The term "NFL" is an acronym that stands for Normandy, Franklin, and Loudon, which are three adjacent streets that run through Edmondson Village. Members of the NFL Enterprise demonstrated and promoted their affiliation through the use of social media, jewelry, tattoos, and other public displays.

2.      Members of the NFL criminal enterprise engaged in a pattern of criminal activity including acts involving murder, narcotics trafficking and smuggling, illegal firearms possession, witness intimidation, and witness retaliation.

3.      At all times relevant to this Fourth Superseding Indictment, the following defendants were members and associates of the NFL criminal enterprise:

> **GREGORY BUTLER,**
> **a/k/a "GOTTI,"**
> **a/k/a "LITTLE DICK,"**
> **a/k/a "SAG,"**
> **DARRAN MALIK BUTLER,**
> **a/k/a "LIK,"**
> **BOBBY CANNON,**
> **a/k/a "FREAKY,"**
> **a/k/a "LOSHO,"**
> **JUAWAN DAVIS,**
> **a/k/a "FAT DADDY,"**
> **D'ANDRE PRESTON**
> **a/k/a "WHITEBOY,"**
> **a/k/a "WHITES," and**
> **JAMES HENRY ROBERTS,**
> **a/k/a "BUB."**

2

## THE RACKETEERING ENTERPRISE

4.      At all times relevant to this Fourth Superseding Indictment, the NFL, including its leaders, members, and associates, constituted an "enterprise" as defined in Section 1961(4) of Title 18, United States Code, that is, a group of individuals associated in fact that engaged in, and the activities of which affected, interstate and foreign commerce. The NFL Enterprise constituted an ongoing organization whose members and associates functioned as a continuing unit for a common purpose of achieving the objectives of the Enterprise.

## PURPOSES OF THE ENTERPRISE

5.      Among the purposes of the NFL Enterprise were the following:

a.      Enriching the leaders, members, and associates of the NFL Enterprise through narcotics trafficking, including the distribution of controlled substances and other related criminal activities, and through the use of threats, intimidation, and violence, including, but not limited to, acts involving murder, brokered killings, and retaliation against witnesses and cooperators;

b.      Promoting and enhancing the reputation and scope of the NFL Enterprise and its members' and associates' activities;

c.      Preserving and protecting the NFL Enterprise and its leaders by keeping its members and associates from cooperating with law enforcement through intimidation, violence, threats of violence, and public displays of aggression and firearms possession;

d.      Providing financial support and information to members, including those members who were incarcerated on charges related to narcotics trafficking, acts of violence, or other offenses;

3

e.       Providing assistance to other members and associates who committed crimes for and on behalf of the NFL Enterprise in order to hinder, obstruct, and prevent law enforcement officers from identifying, apprehending, and punishing the offender; and

f.       Keeping victims and witnesses in fear of the NFL Enterprise and in fear of its leaders, members, and associates through acts of violence, threats of violence, and public displays of aggression.

## THE RACKETEERING CONSPIRACY

6.       Beginning on a date unknown to the Grand Jury, but at least from on or about 2016, and continuing through on or about March 26, 2020, in the District of Maryland, and elsewhere, the defendants,

> **GREGORY BUTLER,**
> **a/k/a "GOTTI,"**
> **a/k/a "LITTLE DICK,"**
> **a/k/a "SAG,"**
> **DARRAN MALIK BUTLER,**
> **a/k/a "LIK,"**
> **BOBBY CANNON,**
> **a/k/a "FREAKY,"**
> **a/k/a "LOSHO,"**
> **JUAWAN DAVIS,**
> **a/k/a "FAT DADDY,"**
> **D'ANDRE PRESTON**
> **a/k/a "WHITEBOY,"**
> **a/k/a "WHITES," and**
> **JAMES HENRY ROBERTS,**
> **a/k/a "BUB,"**

each being a person employed by and associated with the NFL, an enterprise, which engaged in, and the activities of which affected, interstate and foreign commerce, together with each other and with other persons known and unknown to the Grand Jury, did knowingly, intentionally, and unlawfully combine, conspire, confederate, and agree to violate Section 1962(c) of Title 18, United

4

States Code, that is, to conduct and participate, directly and indirectly, in the conduct of the enterprise's affairs through a pattern of racketeering activity, as defined in Sections 1961(1) and (5) of Title 18, United State Code, which pattern of racketeering activity consisted of:

    a.   multiple acts involving:

          i.   Murder, chargeable under Md. Code Ann., Crim. Law §§ 2-201 and 2-204 (Maryland Murder) and 2-205, and 2-206 (Maryland Attempted Murder), and the Common Law of Maryland punishable pursuant to Md. Code Ann., Crim. Law §§ 1-201, 1-202;

    b.   multiple acts indictable under:

          i.   18 U.S.C. § 1512 (Relating to Tampering with a Witness, Victim, or an Informant);

         ii.   18 U.S.C. § 1513 (Relating to Retaliating Against a Witness, Victim, or an Informant);

        iii.   18 U.S.C. § 1958 (Relating to Use of Interstate Commerce Facilities in the Commission of Murder-for-Hire); and

    c.   multiple offenses involving the felonious manufacture, importation, receiving, concealment, buying, selling, and otherwise dealing in a controlled substance punishable under the laws of the United States, in violation of Title 21, United States Code, Section 846 (Conspiracy to Distribute and Possess with Intent to Distribute Controlled Substances) and Section 841 (Distribution and Possession with Intent to Distribute Controlled Substances).

## MANNER AND MEANS OF THE RACKETEERING CONSPIRACY

7.     Among the methods and means by which the members and associates conducted and participated in the conduct of the affairs of the enterprise were the following:

8.     NFL members and associates employed and used specific terminology, symbols, and tattoos.

9.     NFL members and associates agreed to purchase, maintain, and circulate weapons and firearms among NFL members for use in criminal activity by NFL members and associates. NFL members and associates obtained firearms from drug customers as a form of payment in exchange for drugs.

10.     NFL members and associates illegally obtained and distributed prescription pills and medications, including cough syrup containing codeine, a controlled substance.

11.     NFL members and associates used, carried, possessed, brandished, and discharged firearms in connection with the enterprise's illegal activities, including, but not limited to, drug trafficking and acts involving murder.

12.     NFL members and associates used violence, threats of violence, and intimidation to prevent victims and witnesses from cooperating with law enforcement against NFL members and associates about criminal acts committed by NFL members and associates.

13.     NFL members and associates obstructed justice and harmed, threatened, and intimidated witnesses and victims who cooperated with law enforcement, including other members of the NFL Enterprise.

14.     NFL members and associates used social media to promote the NFL Enterprise, including by posting displays of wealth and advertising affiliation to the NFL Enterprise.

15.     NFL members and associates used social media to intimidate and retaliate against actual and suspected witnesses to crimes committed by NFL members and associates, including by posting displays of firearms, brandishing firearms, intimating the use of firearms, and revealing information about the identity of suspected cooperating witnesses.

16.     NFL members and associates distributed and conspired to distribute controlled substances, including, but not limited to heroin, fentanyl, cocaine, and cocaine base, in and around Baltimore City, resulting in the distribution of controlled substances throughout the Mid-Atlantic region and elsewhere.

17.     In order to maximize profits, NFL members and associates adulterated controlled substances for street-level distribution. NFL members and associates also sought to increase the potency of the controlled substances in order to generate customer loyalty to the NFL Enterprise's drug product.

18.     NFL members and associates controlled drug territories and generally permitted only NFL members and associates to sell drugs in these territories.

19.     NFL members and associates used cellular telephones to communicate with one another concerning and during the commission of the enterprise's illegal activities.

20.     NFL members and associates attempted to conceal many of the acts done in furtherance of the NFL Enterprise, and used coded language and other means to avoid detection and apprehension by law enforcement and otherwise to provide security to members and associates of the NFL Enterprise.

21.     NFL members and associates used encrypted communications platforms, such as FaceTime, to avoid law enforcement detection, as well as multiple electronic devices to compartmentalize communications.

22.     NFL members and associates smuggled contraband cell phones and controlled substances into correctional facilities to aid other members and associates of the NFL Enterprise.

23.     NFL members and associates assisted incarcerated NFL members and associates by moving evidence and contraband for them, and assisting with their drug trafficking operations while the NFL members and associates remained incarcerated.

24.     NFL members and associates were involved in murder and attempted murder, including murder-for-hire schemes. NFL members and associates offered bounties for the murder of witnesses and rivals. NFL members and associates acted as brokers connecting hitmen with individuals who had offered bounties for the murder of witnesses and rivals. And NFL members and associates carried out contract killings to enrich themselves and to retaliate against witnesses and rivals.

## OVERT ACTS

25.     In furtherance of the conspiracy and to achieve the objectives thereof, the defendants and others performed and caused to be performed the following overt acts, among others, in the District of Maryland and elsewhere:

26.     Beginning in at least 2016 and continuing through his arrest on federal charges on April 3, 2019, **GREGORY BUTLER** controlled a drug trafficking organization that sold large quantities of heroin, fentanyl, and cocaine. For example, the drug trafficking organization distributed narcotics on the following dates, resulting in non-fatal and fatal overdoses:

8

a. On or about August 16, 2016, **GREGORY BUTLER** coordinated the sale of heroin/fentanyl to "S.D." S.D. purchased heroin/fentanyl from a distributor working for the NFL Enterprise. Later that day, S.D. overdosed and died from the heroin/fentanyl in Rockville, Maryland.

b. On or about October 17, 2016, **GREGORY BUTLER** coordinated the sale of heroin/fentanyl to "R.H." R.H. purchased the heroin/fentanyl from a distributor working for the NFL Enterprise. On or about October 17, 2016, R.H. overdosed and died from the heroin/fentanyl in Frederick County, Maryland.

c. On or about March 5, 2017, a distributor for the NFL Enterprise sold heroin/fentanyl to "D.B." D.B. used a portion of the heroin/fentanyl in a vehicle on his way home and overdosed. D.B. received Narcan and was revived. Later that night, after returning to his home in Mount Airy, Maryland, D.B. used another portion of the heroin/fentanyl, overdosed, and died. At and around the time of D.B.'s overdoses, **GREGORY BUTLER** was overseeing the NFL Enterprise's distribution of narcotics from jail.

d. On or about June 17, 2018, **GREGORY BUTLER** coordinated the sale of heroin/fentanyl to "B.M." On that day, Edward Buddy **Hall** distributed the heroin/fentanyl to B.M. Later that same day, B.M. provided a portion of that heroin/fentanyl to "M.D." M.D. used the heroin/fentanyl, overdosed, received Narcan, and was hospitalized.

e. On or about August 26, 2018, **GREGORY BUTLER** coordinated the sale of heroin/fentanyl to "D.M." Early the next morning, D.M. used the heroin/fentanyl

9

he had bought from the NFL Enterprise, and overdosed in Carroll County, Maryland. D.M. received Narcan and was revived.

f. On or about October 5, 2018, **GREGORY BUTLER** coordinated the sale of heroin/fentanyl to "K.K." K.K. then purchased the heroin/fentanyl from a distributor working for the NFL Enterprise. Later that day, K.K. used the heroin/fentanyl in a restroom in Howard County, Maryland, and overdosed. K.K. received Narcan and was hospitalized.

g. On or about October 18, 2018, **GREGORY BUTLER** coordinated the sale of heroin/fentanyl to K.K. K.K. then purchased the heroin/fentanyl from a distributor working for the NFL Enterprise. On or about October 19, 2018, K.K. used the heroin/fentanyl in a motel in Winchester, Virginia, and overdosed. K.K. received Narcan and was hospitalized.

h. On or about October 31, 2018, **GREGORY BUTLER** coordinated the sale of 30 grams of fentanyl to Jamie **Wagoner**. On or about October 31, 2018, Edward Buddy **Hall** sold approximately 30 grams of fentanyl to Jamie **Wagoner**. On the same day, Jamie **Wagoner** sold some of the fentanyl to C.C. Later that day, C.C. used a portion of the heroin and overdosed in Winchester County, Virginia. C.C. received Narcan and was hospitalized.

i. On or about November 9, 2018, **GREGORY BUTLER** coordinated the sale of heroin to "W.A.E." Desmond **Ringgold** supplied the fentanyl to Kareem Mack, a street-level NFL distributor, who then sold approximately 2.5 grams of fentanyl to

W.A.E. Later that evening, W.A.E. used a portion of the fentanyl and overdosed in Montgomery County, Maryland. W.A.E. received Narcan and was hospitalized.

j. On or about November 11, 2018, **GREGORY BUTLER** coordinated the sale of fentanyl to Timothy **Legard**. Desmond **Ringgold** supplied fentanyl to Donte Bennett, a street-level distributor for the NFL. Bennett then distributed approximately 7.5 grams of that fentanyl to **Legard**. Later in the early morning hours of November 12, 2018, **Legard** distributed a portion of the fentanyl to "S.L" and "A.M." S.L and A.M used the fentanyl and overdosed in Winchester, Virginia. Both S.L and A.M. received Narcan and were revived.

k. On or about November 17, 2018, Donte Bennett provided heroin to his father that Bennett had obtained by virtue of working as a distributor for the NFL Enterprise's drug trafficking operation. On or about November 20, 2018, Bennett's father overdosed and died in Baltimore, Maryland. Later that day, Bennett called **GREGORY BUTLER** and reported that his father had died from the NFL Enterprise's drugs. **GREGORY BUTLER** later admonished Bennett, blaming him for providing the organization's drugs to his father.

l. On or about January 28, 2019, **GREGORY BUTLER** coordinated the sale of fentanyl to "V.C." Tirrel **Saunders** supplied fentanyl to a distributor for the NFL Enterprise, who then sold approximately half of one gram of fentanyl to "V.C." V.C. used the fentanyl and overdosed in Montgomery County, Maryland. V.C. received Narcan, and was hospitalized.

11

     m. On or about March 22, 2019, **GREGORY BUTLER** coordinated the sale of approximately 11 grams of heroin/fentanyl/acetylfentanyl to "S.G." Desmond **Ringgold** supplied heroin/fentanyl/acetylfentanyl to a distributor for the NFL Enterprise, who then sold a portion of heroin/fentanyl/acetylfentanyl to S.G. Later that day, S.G. distributed some of this heroin/fentanyl to A.L. A.L. used the heroin/fentanyl/acetylfentanyl, overdosed, and died from the heroin/fentanyl/acetylfentanyl in Frederick County, ~~Maryland~~ Virginia mb

27.    In or about 2018 through April 2019, **GREGORY BUTLER** maintained a house on Cedardale Road in Baltimore where he adulterated and processed heroin and fentanyl for street-level distribution.

28.    In or about 2018 through April 2019, **ROBERTS** maintained a stash house at Pratt and Franklin Street where **ROBERTS** stored and processed heroin, fentanyl, and cocaine, and stored firearms.

29.    In or about 2018 through December 28, 2019, **CANNON** conspired to obtain and distribute cough syrup containing codeine, a controlled substance.

30.    On or about January 31, 2018, **DAVIS** posted a picture on Instagram of discovery materials in an attempt to intimidate a witness, referred to in the posting as a "rat," who was a witness in a pending prosecution of **DARRAN BUTLER**.

31.    In or about 2018 and continuing through June 16, 2018, **GREGORY BUTLER** offered money for the murder of W.E. because **GREGORY BUTLER** and **ROBERTS** believed W.E. was a federal witness who was cooperating with law enforcement.

32.     In or about 2018 and continuing through June 16, 2018, **ROBERTS** recruited NFL members and associates to kill W.E. in exchange for money.

33.     On June 16, 2018, **CANNON** murdered W.E. and J.H., shooting them multiple times while they sat on a porch in the Edmondson Village neighborhood.

34.     **ROBERTS** paid **CANNON** for the murders of W.E. and J.H. with money supplied by **GREGORY BUTLER**.

35.     Following the murder of W.E. and J.H., **GREGORY BUTLER**, **ROBERTS**, and another member of the NFL Enterprise offered money for the murder of D.G. because they believed D.G. wanted to retaliate for W.E.'s murder.

36.     On or about October 21, 2018, **DARRAN BUTLER** murdered D.G. by shooting him in the Edmonson Village neighborhood. **DARRAN BUTLER** murdered D.G. in exchange for the money offered as a bounty by **GREGORY BUTLER**, **ROBERTS**, and the other NFL member Following D.G.'s murder, **ROBERTS** coordinated the payment of the bounty to **DARRAN BUTLER**.

37.     On or about October 21, 2018, **DAVIS** stated in a wiretapped phone call, "We got the rapper outta there," referring to the murder of D.G.

38.     Beginning at a time unknown, but no later than October 2018, to October 31, 2018, **ROBERTS** solicited **DARRAN BUTLER** to murder L.S. so that **ROBERTS** and **DARRAN BUTLER** could collect a money bounty offered for the murder of L.S.

39.     On or about October 30, 2018, **PRESTON** sent a direct message via Instagram to a juvenile, telling the juvenile to bring him a "bippy," a coded reference to a firearm.

40. On or about October 31, 2018, **DARRAN BUTLER** and **PRESTON** murdered L.S. in exchange for the money offered for L.S.'s murder. **DARRAN BUTLER** and **PRESTON** chased L.S. into a convenience store and shot him multiple times, killing him. Following the murder, **DARRAN BUTLER** posted a picture on Instagram in possession of the murder proceeds.

41. On or about November 1, 2018, **DARRAN BUTLER** fled from the police during a high-speed vehicle chase, and possessed a loaded firearm, marijuana, and oxycodone.

42. On or about November 5, 2018, **GREGORY BUTLER** and **ROBERTS** conspired to murder A.L., a member of the NFL Enterprise, while A.L. was incarcerated at the Chesapeake Detention Facility in Baltimore by paying another federal detainee money to carry out the murder. **ROBERTS** also planned to smuggle a contraband cellular telephone via a corrections officer to a co-conspirator so they could coordinate the murder.

43. On or about December 20, 2018, an associate called **DAVIS** asking him, in substance, for a firearm. **DAVIS** then agreed to transfer a firearm to the associate.

44. On or about December 20, 2018, **DAVIS** possessed a firearm and a mixture or substance containing a detectable amount of fentanyl and aceylfentnayl.

45. Following **DAVIS'** arrest on December 20, 2018, **GREGORY BUTLER** and **ROBERTS** went to **DAVIS'** house and retrieved firearms from inside the house to prevent law enforcement from seizing them. **GREGORY BUTLER** also took custody of a cellular telephone **DAVIS** has used to communicate with drug customers, so the NFL Enterprise could continue to distribute narcotics to **DAVIS'** drug customers.

46. Beginning in 2018 and continuing through January 3, 2019, **ROBERTS** and **CANNON** conspired to murder D.J., in exchange for a money bounty placed for D.J.'s murder.

14

47. On or about January 3, 2019, **CANNON** attempted to murder D.J. by shooting him multiple times outside the federal halfway house where D.J. was residing at the time.

48. On or about January 16, 2019, **GREGORY BUTLER** purchased a firearm equipped with a laser sight from a drug customer in exchange for heroin/fentanyl.

49. On or about January 17, 2019, **GREGORY BUTLER** was arrested by the Baltimore Police Department. During his arrest, **BUTLER** communicated with his mother and requested that she obtain the cellular phones that he used for managing the drug trafficking operations for the NFL Enterprise and transfer them to another member of the NFL Enterprise. **GREGORY BUTLER** also directed his mother and Darean **Cook** to retrieve narcotics he had stored at the Cedardale Avenue stash house.

50. On or about January 18, 2019, Darean **Cook** and **GREGORY BUTLER's** mother retrieved over 800 grams of heroin/fentanyl from the Cedardale Avenue stash house. **GREGORY BUTLER**'s mother then transferred the narcotics to Desmond **Ringgold**.

51. In February 2019, **DAVIS** and **DARRAN BUTLER** obtained a contraband cellular device smuggled into their state detention facility. Using that device, and with the assistance of **GREGORY BUTLER** and **ROBERTS**, they attempted to smuggle controlled substances and other contraband into the facility. As part of this scheme, they intended to bribe a correctional officer to aid in the smuggling.

52. Beginning in 2019, but no later than March 18, 2019, and continuing through March 24, 2019, **GREGORY BUTLER**, **CANNON**, and **ROBERTS** conspired to murder T.W.

53. On April 3, 2019, **GREGORY BUTLER** possessed a loaded firearm.

54. On April 3, 2019, **ROBERTS** possessed a loaded firearm and fentanyl.

15

55.     Following **ROBERTS**' arrest, on April 3, 2019, **ROBERTS** called **CANNON** from a detention facility. During the call, **ROBERTS** used coded language to inform **CANNON** about remaining drug supplies and advised **CANNON** about mixing drugs for distribution.

56.     On or about December 28, 2019, **CANNON** possessed a firearm, over 40 grams of a mixture or substance containing a detectable amount of fentanyl, suboxone, 7.62x39mm ammunition, 9mm ammunition, and .45 caliber ammunition.

57.     On or about March 26, 2020, **PRESTON** possessed a loaded firearm and marijuana.

### **NOTICE OF SPECIAL SENTENCING FACTORS REGARDING COUNT ONE**

58.     Beginning at a time unknown, but at least in or about October 2018 to October 31, 2018, in the District of Maryland and elsewhere, **DARRAN BUTLER**, **PRESTON**, and **ROBERTS** conspired with others known and unknown to the Grand Jury to feloniously, willfully, and with deliberately premeditated malice, kill and murder L.S., in violation of Maryland Code, Criminal Law § 2-201(a)(1) and the Common Law of Maryland, and punishable pursuant to Maryland Code, Criminal Law § 1-202.

59.     Beginning at a time unknown, but at least in or about December 2018 to January 3, 2019, in the District of Maryland and elsewhere, **CANNON** and **ROBERTS** conspired with others known and unknown to the Grand Jury to feloniously, willfully, and with deliberately premeditated malice, kill and murder D.J., in violation of Maryland Code, Criminal Law § 2-201(a)(1) and the Common Law of Maryland, and punishable pursuant to Maryland Code, Criminal Law § 1-202.

60.     From at least 2016 through on or about December 28, 2019, in the District of Maryland, and elsewhere, **GREGORY BUTLER**, **CANNON**, **DAVIS**, and **ROBERTS** did

knowingly and willfully combine, conspire, confederate, and agree with each other and with others known and unknown to the Grand Jury to knowingly and intentionally distribute and possess with intent to distribute 1 kilogram or more of a mixture or substance containing a detectable amount of heroin, a Schedule I controlled substance, 400 grams or more of a mixture of substance containing a detectable amount of fentanyl, a Schedule II controlled substance, and 280 grams or more of a mixture or substance containing a detectable amount of cocaine base, a Schedule II controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1), (b)(1)(A), and 846.

17

## COUNT TWO
### Conspiracy to Distribute Controlled Substances
### Resulting in Death and Serious Bodily Injury

The Grand Jury for the District of Maryland charges that:

Paragraphs 1-5 and 7-57 of Count One of this Fourth Superseding Indictment are re-

alleged and incorporated by reference as though fully set forth herein.

From a time unknown to the Grand Jury, but no later than 2016 through on or about

December 28, 2019, in the District of Maryland, and elsewhere, the defendants:

> **GREGORY BUTLER,**
> a/k/a "GOTTI,"
> a/k/a "LITTLE DICK,"
> a/k/a "SAG,"
> **DARRAN MALIK BUTLER**
> a/k/a "LIK,"
> **BOBBY CANNON,**
> a/k/a "FREAKY,"
> a/k/a "LOSHO,"
> **DAREAN COOK,**
> **JUAWAN DAVIS,**
> a/k/a "FAT DADDY,"
> **EDWARD BUDDY HALL,**
> a/k/a "GWAR,"
> **DESMOND RINGGOLD,**
> a/k/a "WORM,"
> **DAVON OWENS,**
> **JAMES HENRY ROBERTS,**
> a/k/a "BUB,"
> **TIRREL SAUNDERS,**
> a/k/a "PRETTY,"
> **NATHAN STANLEY,**
> **TIMOTHY LEGARD,**
> **JAMIE WAGONER,**
> **LAURA WARNER,**
> **EMANUEL WATKINS,**

did knowingly combine, conspire, confederate, and agree with each other, and with persons known

and unknown to the Grand Jury, to distribute and possess with the intent to distribute a mixture or

18

substance containing a detectable amount of heroin, a Schedule I controlled substance, a mixture or substance containing a detectable amount of N-phenyl-N-[1-(2-phenylethyl)piperidin-4-yl] propanamide, also known as fentanyl, a Schedule II controlled substance, a mixture or substance containing a detectable amount of cocaine base, a Schedule II controlled substance, and a mixture or substance containing a detectable amount of buprenorphine, also known as Suboxone, a Schedule V controlled substance, and that serious bodily injury and death resulted from use of those substances, in violation of 21 U.S.C. § 841.

### QUANTITY OF CONTROLLED SUBSTANCES DISTRIBUTED IN CONSPIRACY

With respect to **GREGORY BUTLER**, **CANNON**, **DAVIS**, **HALL**, **OWENS**, **RINGGOLD**, **ROBERTS**, and **SAUNDERS**, the amount involved in the conspiracy attributable to each of them as a result of their own conduct, and the conduct of other conspirators reasonably foreseeable to them, is one kilogram or more of a mixture or substance containing a detectable amount of heroin, more than 280 grams of a mixture or substance containing a detectable amount of cocaine base, 400 grams or more of a mixture or substance containing a detectable amount of fentanyl, and a detectable amount of a mixture or substance containing a detectable amount of buprenorphine, also known as Suboxone.

With respect to **WATKINS**, the amount involved in the conspiracy attributable to him as a result of his own conduct, and the conduct of other conspirators reasonably foreseeable to him, is more than 280 grams of a mixture or substance containing a detectable amount of cocaine base.

With respect to **COOK**, **LEGARD**, **WAGONER**, and **WARNER**, the amount involved in the conspiracy attributable to each of them as a result of their own conduct, and the conduct of other conspirators reasonably foreseeable to them, is 100 grams or more of a mixture or substance

containing a detectable amount of heroin, a detectable amount of cocaine base, and a detectable amount of fentanyl.

With respect to **STANLEY**, the amount involved in the conspiracy attributable to him as a result of him own conduct, and the conduct of other conspirators reasonably foreseeable to him, is more than 40 grams of a mixture or substance containing a detectable amount of fentanyl, a detectable amount of cocaine base, and a detectable amount of heroin.

With respect to **DARRAN BUTLER**, the amount involved in the conspiracy attributable to him as a result of him own conduct, and the conduct of other conspirators reasonably foreseeable to him, is a detectable amount of heroin, a detectable amount of cocaine base, and a detectable amount of buprenorphine, also known as Suboxone.

## **DEATH AND SERIOUS BODILY INJURY**

The grand jury specifically finds that deaths and serious bodily injuries alleged in this Count were reasonably foreseeable to defendants GREGORY **BUTLER**, BOBBY **CANNON**, JUAWAN **DAVIS**, EDWARD BUDDY **HALL**, DESMOND **RINGGOLD**, JAMES HENRY **ROBERTS**, TIRREL **SAUNDERS**, and JAMIE **WAGONER** based upon their conduct and the scope of conduct of other co-conspirators known to them.

21 U.S.C. § 846

## COUNT THREE
### Distribution of a Controlled Substance Resulting in Death

The Grand Jury for the District of Maryland further charges that:

On or about August 16, 2016, in the District of Maryland, the defendant,

**GREGORY BUTLER,**
**a/k/a "GOTTI,"**
**a/k/a "LITTLE DICK,"**
**a/k/a "SAG,"**

did knowingly and intentionally distribute a mixture or substance containing a detectable amount of heroin, a Schedule I controlled substance, and a mixture or substance containing a detectable amount of fentanyl, a Schedule II controlled substance, and death resulted from use of those substances, to wit, the death of S.D.

21 U.S.C. § 841(a)(1)
18 U.S.C. § 2

21

## COUNT FOUR
### Distribution of a Controlled Substance Resulting in Death

The Grand Jury for the District of Maryland further charges that:

On or about October 17, 2016, in the District of Maryland, the defendant,

**GREGORY BUTLER,**
**a/k/a "GOTTI,"**
**a/k/a "LITTLE DICK,"**
**a/k/a "SAG,"**

did knowingly and intentionally distribute a mixture or substance containing a detectable amount

of heroin, a Schedule I controlled substance, and a mixture or substance containing a detectable

amount of heroin, a Schedule I controlled substance, and a mixture or substance containing a

detectable amount of fentanyl, a Schedule II controlled substance, and death resulted from use of

those substances, to wit, the death of R.H.

21 U.S.C. § 841(a)(1)
18 U.S.C. § 2

## COUNT FIVE
### Distribution of a Controlled Substance Resulting in Death

The Grand Jury for the District of Maryland further charges that:

On or about March 5, 2017, in the District of Maryland, the defendant,

**GREGORY BUTLER,**
**a/k/a "GOTTI,"**
**a/k/a "LITTLE DICK,"**
**a/k/a "SAG,"**

did knowingly and intentionally distribute a mixture or substance containing a detectable amount of heroin, a Schedule I controlled substance, and a mixture or substance containing a detectable amount of fentanyl, a Schedule II controlled substance, and death resulted from use of those substances, to wit, the death of D.B.

21 U.S.C. § 841(a)(1)
18 U.S.C. § 2

## COUNT SIX
**Distribution of a Controlled Substance Resulting in Serious Bodily Injury**

The Grand Jury for the District of Maryland further charges that:

On or about June 17, 2018, in the District of Maryland, the defendants,

**GREGORY BUTLER,**
**a/k/a "GOTTI,"**
**a/k/a "LITTLE DICK,"**
**a/k/a "SAG,"**
**EDWARD BUDDY HALL,**
**a/k/a "GWAR,"**

did knowingly and intentionally distribute a mixture or substance containing a detectable amount

of heroin, a Schedule I controlled substance, and a mixture or substance containing a detectable

amount of fentanyl, a Schedule II controlled substance, and serious bodily injury resulted from use

of those substances, to wit, the serious bodily injury of M.D.

21 U.S.C. § 841(a)(1)
18 U.S.C. § 2

## COUNT SEVEN
### Distribution of a Controlled Substance Resulting in Serious Bodily Injury

The Grand Jury for the District of Maryland further charges that:

On or about August 26, 2018, in the District of Maryland, the defendant,

**GREGORY BUTLER,**
**a/k/a "GOTTI,"**
**a/k/a "LITTLE DICK,"**
**a/k/a "SAG,"**

did knowingly and intentionally distribute a mixture or substance containing a detectable amount of heroin, a Schedule I controlled substance, and a mixture or substance containing a detectable amount of fentanyl, a Schedule II controlled substance, and serious bodily injury resulted from use of those substances, to wit, the serious bodily injury of D.M.

21 U.S.C. § 841(a)(1)
18 U.S.C. § 2

<u>**COUNT EIGHT**</u>
**Distribution of a Controlled Substance Resulting in Serious Bodily Injury**

The Grand Jury for the District of Maryland further charges that:

On or about October 5, 2018, in the District of Maryland, the defendant,

**GREGORY BUTLER,**
**a/k/a "GOTTI,"**
**a/k/a "LITTLE DICK,"**
**a/k/a "SAG,"**

did knowingly and intentionally distribute a mixture or substance containing a detectable amount

of heroin, a Schedule I controlled substance, and a mixture or substance containing a detectable

amount of fentanyl, a Schedule II controlled substance, and serious bodily injury resulted from use

of those substances, to wit, the serious bodily injury of K.K.

21 U.S.C. § 841(a)(1)
18 U.S.C. § 2

## COUNT NINE
### Distribution of a Controlled Substance Resulting in Serious Bodily Injury

The Grand Jury for the District of Maryland further charges that:

On or about October 18, 2018, in the District of Maryland, the defendant,

**GREGORY BUTLER,**
**a/k/a "GOTTI,"**
**a/k/a "LITTLE DICK,"**
**a/k/a "SAG,"**

did knowingly and intentionally distribute a mixture or substance containing a detectable amount

of heroin, a Schedule I controlled substance, and a mixture or substance containing a detectable

amount of fentanyl, a Schedule II controlled substance, and serious bodily injury resulted from use

of those substances, to wit, the serious bodily injury of K.K.

21 U.S.C. § 841(a)(1)
18 U.S.C. § 2

27

## COUNT TEN
**Distribution of a Controlled Substance Resulting in Serious Bodily Injury**

The Grand Jury for the District of Maryland further charges that:

On or about October 31, 2018, in the District of Maryland, the defendants,

**GREGORY BUTLER,**
**a/k/a "GOTTI,"**
**a/k/a "LITTLE DICK,"**
**a/k/a "SAG,"**
**EDWARD BUDDY HALL**
**a/k/a "GWAR,"**
**JAMIE WAGONER,**

did knowingly and intentionally distribute a mixture or substance containing a detectable amount

of fentanyl, a Schedule II controlled substance, and serious bodily injury resulted from use of those

substances, to wit, the serious bodily injury of C.C.

21 U.S.C. § 841(a)(1)
18 U.S.C. § 2

28

## COUNT ELEVEN
### Conspiracy to Use Interstate Commerce Facilities in the Commission of Murder-For-Hire

The Grand Jury for the District of Maryland further charges that:

From on or about October 1, 2018 to on or about October 31, 2018, in the District of

Maryland, the defendants,

**DARRAN MALIK BUTLER,**
**a/k/a "LIK,"**
**D'ANDRE PRESTON,**
**a/k/a "WHITEBOY,"**
**a/k/a "WHITES,"**
**JAMES HENRY ROBERTS,**
**a/k/a "BUB,"**

did knowingly combine, conspire, confederate, and agree with each other, and with persons known

and unknown to the Grand Jury, to use and cause another to use a facility of interstate commerce,

with intent that a murder be committed in violation of the laws of any State and the United States

as consideration for the receipt of, and as consideration for a promise and agreement to pay,

anything of pecuniary value, to wit, the defendants agreed to murder L.S. in exchange for money,

and death resulted.

18 U.S.C. § 1958

29

## COUNT TWELVE
**Use of Interstate Commerce Facilities in the Commission of Murder-For-Hire**

The Grand Jury for the District of Maryland further charges that:

From on or about October 30, 2018 to October 31, 2018, in the District of Maryland, the

defendants,

**DARRAN MALIK BUTLER,**
**a/k/a "LIK,"**
**D'ANDRE PRESTON,**
**a/k/a "WHITEBOY,"**
**a/k/a "WHITES,"**

did knowingly use and cause another to use a facility of interstate commerce and travel in interstate

commerce, with intent that a murder be committed in violation of the laws of any State and the

United States as consideration for the receipt of, and as consideration for a promise and agreement

to pay, anything of pecuniary value, to wit, the Defendants agreed to murder L.S. in exchange for

money, and death resulted.


18 U.S.C. § 1958
18 U.S.C. § 2

## COUNT THIRTEEN
### Distribution of a Controlled Substance Resulting in Serious Bodily Injury

The Grand Jury for the District of Maryland further charges that:

On or about November 9, 2018, in the District of Maryland, the defendant,

**GREGORY BUTLER,**
**a/k/a "GOTTI,"**
**a/k/a "LITTLE DICK,"**
**a/k/a "SAG,"**

did knowingly and intentionally distribute a mixture or substance containing a detectable amount

of fentanyl, a Schedule II controlled substance, and serious bodily injury resulted from use of those

substances, to wit, the serious bodily injury of W.A.E.

21 U.S.C. § 841(a)(1)
18 U.S.C. § 2

31

## COUNT FOURTEEN
**Distribution of a Controlled Substance Resulting in Serious Bodily Injury**

The Grand Jury for the District of Maryland further charges that:

On or about November 11, 2018, in the District of Maryland, the defendants,

**GREGORY BUTLER,**
**a/k/a "GOTTI,"**
**a/k/a "LITTLE DICK,"**
**a/k/a "SAG,"**
**TIMOTHY LEGARD,**

did knowingly and intentionally distribute a mixture or substance containing a detectable amount

of fentanyl, a Schedule II controlled substance, and serious bodily injury resulted from use of those

substances, to wit, the serious bodily injury of S.L. and A.M.

21 U.S.C. § 841(a)(1)
18 U.S.C. § 2

32

## COUNT FIFTEEN
**Possession of a Firearm During and in Relation to a Drug Trafficking Crime**

The Grand Jury for the District of Maryland further charges that:

On or about December 20, 2018, in the District of Maryland, the defendant,

### JUAWAN DAVIS,
### a/k/a "FAT DADDY,"

did knowingly possess a firearm during and in relation to a drug trafficking crime for which he may be prosecuted in a court of the United States, that is, the offense charged in Count Two of this Fourth Superseding Indictment, Conspiracy to Distribute Controlled Substances, in violation of Title 21, United States Code, Section 846, and Count Sixteen of this Fourth Superseding Indictment, Possession with Intent to Distribute a Controlled Substance, in violation of Title 21, United States Code, Section 841.

18 U.S.C. § 924(c)

33

## COUNT SIXTEEN
### Possession with Intent to Distribute a Controlled Substance

The Grand Jury for the District of Maryland further charges that:

On or about December 20, 2018, in the District of Maryland, the defendant,

**JUAWAN DAVIS,**
**a/k/a "FAT DADDY,"**

did knowingly and intentionally possess with intent to distribute a mixture or substance containing

a detectable amount of fentanyl, a Schedule II controlled substance.

21 U.S.C. § 841(a)(1)

## COUNT SEVENTEEN
### Distribution of a Controlled Substance Resulting in Serious Bodily Injury

The Grand Jury for the District of Maryland further charges that:

On or about January 28, 2019, in the District of Maryland, the defendant,

**GREGORY BUTLER,**
**a/k/a "GOTTI,"**
**a/k/a "LITTLE DICK,"**
**a/k/a "SAG,"**

did knowingly and intentionally distribute a mixture or substance containing a detectable amount

of fentanyl, a Schedule II controlled substance, and serious bodily injury resulted from use of those

substances, to wit, the serious bodily injury of V.C.

21 U.S.C. § 841(a)(1)
18 U.S.C. § 2

35

## COUNT EIGHTEEN
**Possession with Intent to Distribute a Controlled Substance**

The Grand Jury for the District of Maryland further charges that:

On or about March 11, 2019, in the District of Maryland, the defendant,

## LAURA WARNER,

did knowingly and intentionally possess with intent to distribute a mixture or substance containing

a detectable amount of heroin, a Schedule I controlled substance.

21 U.S.C. § 841(a)(1)

36

## COUNT NINETEEN
### Distribution of a Controlled Substance Resulting in Death

The Grand Jury for the District of Maryland further charges that:

On or about March 22, 2019, in the District of Maryland, the defendant,

**GREGORY BUTLER,**
**a/k/a "GOTTI,"**
**a/k/a "LITTLE DICK,"**
**a/k/a "SAG,"**

did knowingly and intentionally distribute a mixture or substance containing a detectable amount

of heroin, a Schedule I controlled substance, a mixture or substance containing a detectable amount

of fentanyl, a Schedule II controlled substance, and a mixture or substance containing

acetylfentanyl, a Schedule I controlled substance, and death resulted from use of those substances,

to wit, the death of A.L.

21 U.S.C. § 841(a)(1)
18 U.S.C. § 2

37

## COUNT TWENTY
**Possession of a Firearm During and in Relation to a Drug Trafficking Crime**

The Grand Jury for the District of Maryland further charges that:

On or about April 3, 2019 in the District of Maryland, the defendant,

**EDWARD BUDDY HALL,**
**a/k/a "GWAR,"**

did knowingly possess a firearm during and in relation to a drug trafficking crime for which he

may be prosecuted in a court of the United States, that is, the offense charged in Count Two of this

Fourth Superseding Indictment, Conspiracy to Distribute Controlled Substances, in violation of

Title 21, United States Code, Section 846.

18 U.S.C. § 924(c)

## COUNT TWENTY-ONE
### Possession of a Firearm and Ammunition by a Prohibited Person

The Grand Jury for the District of Maryland further charges that:

On or about April 3, 2019 in the District of Maryland, the defendant,

### EDWARD BUDDY HALL,
### a/k/a "GWAR,"

knowing he had previously been convicted of a crime punishable by imprisonment for a term exceeding one year, knowingly possessed in and affecting interstate commerce a firearm and ammunition, that is, one Ruger 9mm pistol bearing serial number TYE83852, and ammunition.

18 U.S.C. § 922(g)(1)

39

**COUNT TWENTY-TWO**
**Possession of a Firearm During and in Relation to a Drug Trafficking Crime**

The Grand Jury for the District of Maryland further charges that:

On or about April 3, 2019 in the District of Maryland, the defendant,

**GREGORY BUTLER,**
**a/k/a "GOTTI,"**
**a/k/a "LITTLE DICK,"**
**a/k/a "SAG,"**

did knowingly possess a firearm during and in relation to a drug trafficking crime for which he

may be prosecuted in a court of the United States, that is, the offense charged in Count Two of this

Fourth Superseding Indictment, Conspiracy to Distribute Controlled Substances, in violation of

Title 21, United States Code, Section 846.

18 U.S.C. § 924(c)

40

**COUNT TWENTY-THREE**
**Possession of a Firearm and Ammunition by a Prohibited Person**

The Grand Jury for the District of Maryland further charges that:

On or about April 3, 2019 in the District of Maryland, the defendant,

**GREGORY BUTLER,**
**a/k/a "GOTTI,"**
**a/k/a "LITTLE DICK,"**
**a/k/a "SAG,"**

knowing he had previously been convicted of a crime punishable by imprisonment for a term

exceeding one year, did knowingly possess in and affecting interstate commerce a firearm and

ammunition, that is, one Walther P22 pistol bearing serial number WA006344, and ammunition.

18 U.S.C. § 922(g)(1)

41

## COUNT TWENTY-FOUR
### Possession with Intent to Distribute a Controlled Substance

The Grand Jury for the District of Maryland further charges that:

On or about April 3, 2019 in the District of Maryland, the defendant,

### JAMES HENRY ROBERTS,
### a/k/a "BUB,"

did knowingly and intentionally possess with intent to distribute a mixture or substance containing

a detectable amount of fentanyl, a Schedule II controlled substance.

21 U.S.C. § 841(a)(1)

## COUNT TWENTY-FIVE
**Possession of a Firearm During and in Relation to a Drug Trafficking Crime**

The Grand Jury for the District of Maryland further charges that:

On or about April 3, 2019 in the District of Maryland, the defendant,

### JAMES HENRY ROBERTS,
### a/k/a "BUB,"

did knowingly possess a firearm during and in relation to a drug trafficking crime for which he may be prosecuted in a court of the United States, that is, the offense charged in Count Two of this Fourth Superseding Indictment, Conspiracy to Distribute Controlled Substances, in violation of Title 21, United States Code, Section 846, and Count Twenty-Four of this Fourth Superseding Indictment, Possession with Intent to Distribute a Controlled Substance, in violation of Title 21, United States Code, Section 841.

18 U.S.C. § 924(c)

## COUNT TWENTY-SIX
### Possession of a Firearm and Ammunition by a Prohibited Person

The Grand Jury for the District of Maryland further charges that:

On or about April 3, 2019 in the District of Maryland, the defendant,

### JAMES HENRY ROBERTS,
### a/k/a "BUB,"

knowing he had previously been convicted of a crime punishable by imprisonment for a term exceeding one year, did knowingly possess in and affecting interstate commerce a firearm and ammunition, that is, one American Tactical .45 pistol bearing serial number TB106818, and ammunition.

18 U.S.C. § 922(g)(1)

44

## COUNT TWENTY-SEVEN
### Possession with Intent to Distribute a Controlled Substance

The Grand Jury for the District of Maryland further charges that:

On or about April 3, 2019 in the District of Maryland, the defendant,

### DAVON OWENS,
### a/k/a "GUSTO,"

did knowingly and intentionally possess with intent to distribute a mixture or substance containing

a detectable amount of heroin, a Schedule I controlled substance.

21 U.S.C. § 841(a)(1)

45

## COUNT TWENTY-EIGHT
### Possession of a Firearm During and in Relation to a Drug Trafficking Crime

The Grand Jury for the District of Maryland further charges that:

On or about April 3, 2019 in the District of Maryland, the defendant,

### DAVON OWENS,
### a/k/a "GUSTO,"

did knowingly possess a firearm during and in relation to a drug trafficking crime for which he may be prosecuted in a court of the United States, that is, the offense charged in Count Two of this Fourth Superseding Indictment, Conspiracy to Distribute Controlled Substances, in violation of Title 21, United States Code, Section 846, and Count Twenty-Seven of this Fourth Superseding Indictment, Possession with Intent to Distribute a Controlled Substance, in violation of Title 21, United States Code, Section 841.

18 U.S.C. § 924(c)

## COUNT TWENTY-NINE
### Possession of a Firearm and Ammunition by a Prohibited Person

The Grand Jury for the District of Maryland further charges that:

On or about April 3, 2019 in the District of Maryland, the defendant,

### DAVON OWENS,
### a/k/a "GUSTO,"

knowing he had previously been convicted of a crime punishable by imprisonment for a term

exceeding one year, did knowingly possess in and affecting interstate commerce a firearm that is,

one Beretta Para 9mm pistol bearing serial number NUO26683.

18 U.S.C. § 922(g)(1)

47

## COUNT THIRTY
### Possession with Intent to Distribute a Controlled Substance

The Grand Jury for the District of Maryland further charges that:

On or about December 28, 2019 in the District of Maryland, the defendant,

### BOBBY CANNON,
### a/k/a "FREAKY,"
### a/k/a "LOSHO,'

did knowingly and intentionally possess with intent to distribute 40 grams or more of mixture or

substance containing a detectable amount of fentanyl, a Schedule II controlled substance.

21 U.S.C. § 841(a)(1)

48

## COUNT THIRTY-ONE
**Possession of a Firearm During and in Relation to a Drug Trafficking Crime**

The Grand Jury for the District of Maryland further charges that:

On or about December 28, 2019, in the District of Maryland, the defendant,

**BOBBY CANNON,**
**a/k/a "FREAKY,"**
**a/k/a "LOSHO,"**

did knowingly possess a firearm during and in relation to a drug trafficking crime for which he may be prosecuted in a court of the United States, that is, the offense charged in Count Two of this Fourth Superseding Indictment, Conspiracy to Distribute Controlled Substances Resulting in Death and Serious Bodily Injury, in violation of Title 21, United States Code, Section 846, and Count Thirty of this Fourth Superseding Indictment, Possession with Intent to Distribute a Controlled Substance, in violation of Title 21, United States Code, Section 841.

18 U.S.C. § 924(c)

## COUNT THIRTY-TWO
**Possession with Intent to Distribute a Controlled Substance**

The Grand Jury for the District of Maryland further charges that:

On or about January 22, 2020 in the District of Maryland, the defendant,

**D'ANDRE PRESTON,**
**a/k/a "WHITEBOY,"**
**a/k/a "WHITES,"**

did knowingly and intentionally possess with intent to distribute 40 grams or more of mixture or

substance containing a detectable amount of fentanyl, a Schedule II controlled substance.

21 U.S.C. § 841(a)(1)

## COUNT THIRTY-THREE
**Possession of a Firearm and Ammunition by a Prohibited Person**

The Grand Jury for the District of Maryland further charges that:

On or about March 26, 2020 in the District of Maryland, the defendant,

**D'ANDRE PRESTON,**
**a/k/a "WHITEBOY,"**
**a/k/a "WHITES,"**

knowing he had previously been convicted of a crime punishable by imprisonment for a term exceeding one year, did knowingly possess in and affecting interstate commerce a firearm and ammunition, that is, one Ruger .40 caliber pistol bearing serial number 340-85690, and ammunition.

18 U.S.C. § 922(g)(1)

## FORFEITURE

The Grand Jury for the District of Maryland further finds that:

1.      Pursuant to Rule 32.2, Fed. R. Crim. P., notice is hereby given to the defendants that the United States will seek forfeiture as part of any sentence in accordance with Title 18, United States Code, Section 924(d), Title 21, United States Code Section 853(a), Title 18, United States Code, Section 1963(a), and Title 28, United States Code, Section 2461(c), as a result of the defendants' conviction(s).

### Narcotics Forfeiture

2.      Pursuant to 21 U.S.C. § 853(a), upon conviction of an offense in violation of the Controlled Substances Act, as alleged in the Narcotics Count(s), the defendant(s) convicted of such offense(s),    shall forfeit to the United States of America:

  a.  any property constituting, or derived from, any proceeds obtained, directly or indirectly, as a result of such offense(s); and

  b.  any property used, or intended to be used, in any manner or part, to commit, or facilitate the commission of, such offense(s).

### Firearms and Ammunition Forfeiture

3.      Pursuant to 18 U.S.C. § 924(d), upon conviction of an offense(s) alleged in Firearms Count(s), the defendant(s) convicted of such offense(s) shall forfeit to the United States, pursuant to 18 U.S.C. § 924(d) and 28 U.S.C. § 2461(c), any firearms and ammunition involved in those offense(s).

**Substitute Assets**

5.       Pursuant to 21 U.S.C. § 853(p), if any of the property described above as being subject to forfeiture, as a result of any act or omission by the defendant(s):

      a.   cannot be located upon the exercise of due diligence;

      b.   has been transferred or sold to, or deposited with, a third person;

      c.   has been placed beyond the jurisdiction of the Court;

      d.   has been substantially diminished in value; or

      e.   has been comingled with other property which cannot be subdivided without difficulty,

it is the intent of the United States to seek forfeiture of any other property of the Defendant(s) up to the value of the property charged with forfeiture in the paragraphs above.

**Property Subject to Forfeiture**

6.       The property to be forfeited includes, but is not limited to, the following:

      b.   2007   Ford   truck   bearing   Vehicle   Identification   Number 1FTPW14V37FA77557;

      c.   2009   Acura   TL   bearing   Vehicle   Identification   Number 19UUA96599A004790;

      d.   2016   Honda   Accord   bearing   Vehicle   Identification   Number 1HGCT2B09GA006396;

      e.   416 Mount Holly Street, Baltimore, Maryland;

      f.   one Walther P22 pistol bearing serial number WA006344;

      g.   one Polymero80 9mm pistol bearing serial number PF940SC;

  h.  one Smith & Wesson M&P Shield 9mm pistol bearing serial number LEE1086;

  i.  one Ruger 9mm pistol bearing serial number TYE83852;

  j.  one Beretta Para 9mm pistol bearing serial number NUO26683;

  k.  one Ruger .40 caliber pistol bearing serial number 340-85690;

  l.  one American Tactical .45 pistol bearing serial number TB106818; and

  m.  ammunition.

18 U.S.C. § 924(d)
21 U.S.C. § 853
28 U.S.C. § 2461(c)

                /MDB

         _____
         ROBERT K. HUR
         United States Attorney

A TRUE BILL:


**SIGNATURE REDACTED**    Dated: _9 / 15_____ 2020

Foreperson

54