IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| | : | |
| vs. | : | Criminal No. 19-137-PWG |
| | : | |
| GREGORY BUTLER, | : | |
| | : | |
| Defendant. | : | |

### GOVERNMENT'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO SUPPRESS TANGIBLE EVIDENCE (ECF# 1195)

The United States asks the Court to deny Butler's Motion to Suppress Tangible Evidence because he lacks standing to argue the Court should suppress evidence that law enforcement seized from a trash bin left in public for collection.

### Procedural Background

On September 26, 2022, Defendant Gregory Butler filed a motion to suppress evidence law enforcement seized from garbage left out for regular weekly pickup in February 2019. His motion landed nearly 2 months after the Court's pretrial motions deadline, and less than 1 week before the pretrial motions hearing (ECF# 1086). Later that day, the Court ordered the United States to respond to Butler's motion (ECF# 1197). The United States now files its response to Butler's unpunctual argument and asserts that he lacks standing to make it because he fails to sufficiently make any subjective privacy claim, and even if he had, such claim is objectively unreasonable.

### Factual Background

In the cold, early morning hours of February 7, 2019, FBI Special Agent Pete Cauffman and Task Force Officer Chris Bush pulled bags of trash from a container that someone had put out to be collected as part of the city's regular weekly pickup from 3901 Cedardale Road in Baltimore.

Inside the bags, they discovered evidence of drug trafficking and DNA evidence tying Butler to the contents.

Over prior weeks, law enforcement agents surveilled that residence and the surrounding properties; they knew which days city garbage collectors picked up, as well as how the area's residents staged garbage containers the night prior. Specifically, agents saw that the regular pre-pickup practice of the occupants of 3901 Cedardale was to move the container further away from the home, open the gate separating the yard from the public alley, and place the garbage container so that it was half of it was in the public alleyway. This placement permitted garbage trucks to drive down the alleyway without the containers obstructing their path, while indicating that the residents wanted the garbage removed.

To obtain the evidence from 3901 Cedardale's trash, law enforcement moved in the same public space the city garbage collectors do every week. They drove into the public alleyway and removed trash from the container as it sat in a public area. The agents did not set foot inside the fenced area, nor did they pull the container from the curtilage of the home into public.

The investigation into Butler showed law enforcement that 3901 Cedardale Road was a stash house – a location Butler used to process and store his illegal narcotics. During the investigation, law enforcement identified multiple cellular telephones used by Butler and monitored their location with the phones' precision GPS cellular data. During the entire investigation, there were no instances where law enforcement observed Butler or the cellular phones he utilized staying overnight at 3901 Cedardale Road. Moreover, based on precision GPS cellular data, Butler appeared to never stay at 3901 Cedardale Road for more than a few hours. Law enforcement officers conducted a check of open source databases for persons who reside at 3901 Cedardale Road. Gregory Butler was not listed.

**Argument**

"When the Government obtains information by physically intruding on… houses… a search within the original meaning of the Fourth Amendment has undoubtedly occurred." *Florida v. Jardines*, 569 U.S. 1, 5 (2013).  However, "the Fourth Amendment does not prohibit 'the warrantless search and seizure of garbage left for collection outside the curtilage of a home.'" *United States v. Jackson*, 728 F.3d 367, 372 (4th Cir. 2013) (quoting *California v. Greenwood*, 486 U.S. 35, 37 (1988)).   Standing to make a Fourth Amendment challenge depends upon two factors: (1) whether the defendant demonstrated by his conduct a subjective expectation of privacy, and (2) whether society is prepared to recognize that expectation as reasonable. *Smith v. Maryland*, 442 U.S. 735, 740 (1979).  "The law is well established that a person who voluntarily abandons property loses any reasonable expectation of privacy in the property and is consequently precluded from seeking to suppress evidence seized from the property." *United States v. Leshuk*, 65 F.3d 1105, 1111 (4th Cir. 1995); *accord United States v. Stevenson*, 396 F.3d 538, 546 (4th Cir. 2005).

The Fourth Amendment's protections do not attach to every visitor.  *United States v. Gray*, 491 F.3d 138, 145 (4th Cir. 2007).  A visitor "merely present with the consent of the householder" does not necessarily have a legitimate expectation of privacy. *Minnesota v. Carter*, 525 U.S. 83, 90 (1998).  Indeed it is a foundational principle that "not all persons in the company of the property owner have the owner's right to assert the spatial protection." *Id*. at 99, (Kennedy, J., concurring). The Supreme Court has repeatedly held that the Fourth Amendment is not so broad as to encompass "anyone legitimately on the premises where a search occurs." *Id*. at 90.  Thus, a temporary visitor to a residence cannot generally claim the Fourth Amendment's protections. *See*, *e.g.*, *Carter*, 525 U.S. at 90, 119 S.Ct. 469; *Terry v. Martin*, 120 F.3d 661, 664 (7th Cir.1997).

This is especially true for visitors who are "essentially present for a business transaction" – they have no legitimate expectation of privacy in the residence of a third party. *Carter* at 90-91.

A trash can protruding from an open gate out into a public alleyway is abandoned property not within the curtilage of a home. Because Butler lacks a subjective privacy interest, and there exists no societally accepted objective expectation of privacy in this property, no search occurred under the Fourth Amendment.

Butler's motion contained photos of the property, including a photo purporting to depict a garbage container sitting entirely inside the curtilage. *See* below photo taken from ECF# 1195. But the container's placement in this photo is misleading – when agents collected its contents, the container was halfway outside of the fence and into the alleyway.[1]



---

[1] The red arrow, added by the United States, indicates approximately the midpoint of the container when agents collected its contents.

<u>Butler did not demonstrate a subjective intent to keep the contents of the garbage container private</u>

The "threshold inquiry" in this Fourth Amendment claim is whether Butler has standing to assert an unconstitutional search occurred. *United States v. Ferebee*, 957 F.3d 406, 412 (4th Cir. 2020). Butler failed to meet this initial prerequisite to establish his standing as he did not lay claim to any personal privacy interest. The privacy interest that Butler must establish to support standing is an interest in the area searched, not an interest in the items found. *United States v. Manbeck*, 744 F.2d 360, 374 (4th Cir. 1984) (citing *Rawlings v. Kentucky*, 448 U.S. 98, 104–106 (1980)).

Because Butler, "not the government, bears the burden of establishing a privacy interest," he must present the Court with some evidence that his rights were violated. *United States v. Ruth*, 65 F.3d 599, 605 (7th Cir. 1995). Butler's motion merely proffers that "the trash bags were placed" in the garbage container, by some unnamed "residents," to whom Butler fails to allege any relation whatsoever. The existence of a privacy interest "depends, in part, on the defendant's subjective intent" and it is "almost impossible" to establish a reasonable expectation of privacy without an affidavit or testimony from the defendant. *United States v. Meyer*, 157 F.3d 1067, 1080 (7th Cir. 1998). Butler offers neither. The silence in his motion's screams out the abandoned status of the property Butler seeks to suppress yet fails to claim.

<u>Butler's privacy claim is not objectively reasonable</u>

*Butler's brief visits to the residence were meant to effectuate business transactions*

Butler was not a resident of the home, nor an overnight guest. Having been present in the home for a matter of mere hours at a time. At most, his status is of a person essentially present for business transactions. Indeed, the investigation revealed that the home was used to process and store the illegal drugs Butler sold as part of his illicit business. Accordingly, he had no legitimate expectation of privacy in the residence or its curtilage. *Carter*, 525 U.S. at 90.

5

*The garbage was abandoned*

"It is common knowledge that plastic garbage bags left on or at the side of a public street are readily accessible to animals, children, scavengers, snoops, and other members of the public." *California v. Greenwood*, 486 U.S. at 40.  The residents of 3901 Cedardale placed the garbage container outside in anticipation of that day's trash collection for its contents to be hauled away.  It is especially noteworthy that many of the trash cans in the neighborhood were regularly moved to halfway-in-the-alleyway locations in anticipation of trash pickup, further demonstrating the community's shared understanding that such placement was a standard signal of abandonment to the trash collectors.  They had thus abandoned its contents along with any objective expectation of privacy.

*The garbage was located outside of the curtilage*

"The test used to determine the boundaries of a home's curtilage is not a finely tuned formula that, when mechanically applied, yields a 'correct' answer to all extent-of-curtilage questions." *United States v. Dunn*, 480 U.S. 294, 301, (1987).  In *Dunn*, the Supreme Court instructed "that curtilage questions should be resolved with particular reference to four factors: [1] the proximity of the area claimed to be curtilage to the home, [2] whether the area is included within an enclosure surrounding the home, [3] the nature of the uses to which the area is put, and [4] the steps taken by the resident to protect the area from observation by people passing by." *Id*.  At the same time the Supreme Court cautioned that "these factors are useful analytical tools only to the degree that, in any given case, they bear upon the centrally relevant consideration—whether the area in question is so intimately tied to the home itself that it should be placed under the home's 'umbrella' of Fourth Amendment protection." *United States v. Jackson*, 728 F.3d 367, 373–74 (4th Cir. 2013) (quoting *Dunn* at 301).

While the residence's fence appears to be within 10 feet of the building on the side where agents pulled the trash, this distance is not dispositive to the curtilage question. Butler attempts to brush past the reality that the residence has a narrow side yard abutting into what is an unquestionably public roadway. "[The container was c]learly within a few feet of the residence itself. Therefore, it was clearly within the curtilage." ECF# 1195 at 5. But Butler cannot clearly reduce the feet of the enclosed yard to fit formula he seeks. In *Jackson*, the Fourth looked to "the context" of housing where units share a common area and found that smaller areas do not necessarily "require the conclusion" that the curtilage extends as far as it might otherwise. *See Jackson* at 374.

The second and forth *Dunn* factors, whether the area is included within an enclosure, and what steps taken the resident took to protect the area from observation by people passing by, weigh heavily in the United States favor. Though the residence has a fenced yard, whoever put out the trash opened the gate and placed the container partly outside of that enclosure. The container's location ensured that the gate could not close with the container inside, and it allowed for law enforcement to secure the container's contents without setting foot or hand across the threshold. Butler's analysis of the fourth factor is flawed. He claims an edge because "the trash bags were placed inside a trash can and… the contents of the trash bags were not visible to outsiders." ECF# 1195 at 5. Butler's opacity argument is a transparent attempt to shade the container itself as protected curtilage, rather than the area surrounding the residence. In *Jackson*, which Butler cites just 2 paragraphs earlier, the circuit court's analysis focused not on the bags or the can, but rather whether the defendant had taken any steps to shield "the area from view of people passing by." *Jackson* at 374. So too should this Court find that the occupants of 3901

7

Cedardale made no attempts to conceal the area outside of their fence, where they had placed the trash can.

Like in *Jackson*, the third prong of the *Dunn* test, the use to which the area claimed to be curtilage was put is "most telling." *Jackson* at 374. Here, as in *Jackson*, the occupants of 3901 Cedardale left the trash can exposed outside the curtilage of their home, in a common area shared by the others in the neighborhood. The area on which half of the trash can sat was a drivable, publicly accessible alleyway. Butler cannot now claim to have had a reasonable expectation of privacy in its contents.

## Conclusion

Butler's lacks standing to make his Motion because law enforcement's action did not constitute a Fourth Amendment search. The Court should accordingly deny his request to suppress evidence law enforcement obtained from trash left in a public area.

Respectfully submitted,

EREK L. BARRON
United States Attorney

_____

ROBERT I. GOLDARIS
JAMES T. WALLNER
JOHN W. SIPPEL
Assistant United States Attorneys

**Certificate of Service**

I certify that I filed the foregoing document via the Court's EM/ECF system. Such action provided notice to defense counsel in accordance with the Local Rules.

_____/s/_____
Robert I. Goldaris
Assistant United States Attorney
